**In re the COMPLAINT OF SEABULK OFFSHORE, LTD., for Limitation of Liability as Owner of the M.V. Seabulk Louisiana.**

Civil Action No. H–00–3290.

United States District Court,
S.D. Texas.

July 24, 2002.

---

James T. Brown, Houston, TX, for Plaintiff.

James M. Tompkins, Houston, TX, for Defendant.

Opinion on Damages

HUGHES, District Judge.

**1.** *Introduction.*

The Gulf Prince Shrimp Company seeks to recover lost profits from the 2000–01 shrimping season. Its vessel, the *Capt. James* was a constructive total loss, yet it seeks the measure of damages applied to salvageable vessels. The measure of damages for a total loss applies.

**2.** *Background.*

On September 20, 2000, the M.V. *Seabulk Louisiana,* an offshore supply ship, rammed the starboard bow of the M.V. *Capt. James,* a shrimper owned by Gulf Prince Shrimp Company, off of Aransas Pass, Texas. *Seabulk* was on autopilot, with no lookout. Although she was able to return to port and unload her catch, the *Capt. James* was a total loss, and four of her crew were injured.

Gulf Prince did not replace the *Capt. James* until April 2001. Gulf Prince says that it could not afford to buy a new ship until it received the proceeds from the salvage and the insurance. The Texas gulf coast shrimping season runs from mid-July through mid-February. Gulf Prince missed approximately five months of the 2000–2001 season and seeks lost profits for that time.

**3.** *Total Loss.*

█ A vessel is a total loss when it sinks with no salvage practical. A vessel is a constructive total loss when the cost of restoring it exceeds the value of the vessel immediately before the accident or after the repairs. *Ryan Walsh Stevedoring Co. v. James Marine Services, Inc.,* 792 F.2d 489, 491 (5th Cir.1986). The effect of a total loss—real or constructive—is identical in that the vessel is not reasonably repairable.

The parties stipulate that the *Capt. James* is a constructive total loss.

**4.** *Value of the Vessel.*

█ The owner cannot recover for loss of use when a vessel is a constructive total loss. *King Fisher Marine Service, Inc. v. The N/P Sunbonnet,* 724 F.2d 1181, 1187 (5th Cir.1984). When a vessel is a total loss, the measure of damage is the value of the vessel at the time and place of its loss, the value of the freight pending at its loss, and interest on those two amounts from the date of the loss. *O'Brien Bros. Inc. v. The Helen B. Moran,* 160 F.2d 502, 505 (2d Cir.1947).

█ This measure of damages has been used in England and America since at least the early 1900s. Because the potential profits give value to the vessel, a shipowner cannot recover the lost profits from a charter. *The Owners of Dredger Liesbosch v. The Owners of Steamship Edison,* (1933) A.C. 449 (U.K.).

Lost profits may not be awarded separately because they are accounted for in the damage formula in both the value of the vessel and the interest rate. The val-

ue of the vessel includes the value of her future contribution to work. A shrimp boat that no longer shrimps loses much of her value because of her inability to work in the future.

The value of the *Capt. James* also accounts for Gulf Prince's difficulty replacing her. The supply of shrimp boats like the *Capt. James* is limited, and her value is higher than it would be if she were a more common vessel. The scarcity of a vessel affects the value of the vessel.

The *Capt. James* was able to take her catch to port, so she did not suffer the loss of pending freight.

### 5. *Interest.*

The interest rate on the vessel's value compensates the owner for the lost rate of return on capital investment. An owner expects a percentage of return on his capital investment in a commercial vessel. This rate compensates for the boat's contribution to the enterprise. Applying an interest rate from the date of the collision approximates the actual return Gulf Prince would have earned from the *Capt. James* and includes an allowance for lost profits.

### 6. *Certainty.*

If the law allowed future profits that were shown with substantial certainty, Gulf Prince would not recover. Gulf Prince's estimates of its lost profit vary between $46,625 and $75,712.50. This $30,000 variation is over 60% of Gulf Prince's lower estimate. The profit estimates are speculative. Admiralty law favors certainty because it offers a predictable measurement of damages, reducing the transaction costs.

### 7. *Conclusion.*

Gulf Prince's recovery will be limited to $242,000 as the fair market value of the *Capt. James* at the time of the collision and interest on that value dating back to September 21, 2000.